The next case called for oral argument is Excalibur Energy Company v. Rochman. Right. We get that. Have you, I know that you've requested the use of the exhibits that's been shown to the opposing party? Yes. Okay. Go ahead. May it please the court. Your honors, my name is Mindy Salyer and I represent the defendant Marilyn Rochman along with my co-counsel William Broome of Carbondale. Presented for issue on appeal are four main issues before the court today. And just quickly, those are whether or not the trial court erred in dismissing and denying Marilyn Rochman's motion to dismiss. Whether the trial court erred in not allowing Marilyn Rochman the opportunity to file a written answer to contest the material allegations of the second amended complaint. And third, whether the trial court erred in granting summary judgment in favor of plaintiff Excalibur based solely on the third alternative reason that the 1997 tax deed was void for lack of personal jurisdiction pursuant to Devon Bank. And then ultimately, whether as a matter of law, the trial court erred in granting summary judgment in favor of Excalibur on the basis that Excalibur does not have title to the property pursuant to the deeds of record. Your honor, the first issue, the motion to dismiss, by way of background, the second amended complaint. The court granted Excalibur a deed to file a second amended complaint after the court denied Excalibur's motion for partial summary judgment off of its first amended complaint. After Excalibur filed their second amended complaint, which is roughly eight pages long and it starts at C442 of the record, Marilyn Rochman elected procedurally to file a 615 motion to dismiss lodged against the second amended complaint. For the basis that the second amended complaint was not sufficient in that it did not state a cause of action to which relief could be granted. The second amended complaint was brought solely pursuant to ejectment. However, ultimately, what it sought to do was to set aside the 1997 tax deed as void through quiet title. And so the motion to dismiss pursuant to 615 was clear that an action in ejection cannot be brought to set aside the 1997 order. Or to contest a tax deed or to set aside a tax deed. At that November 2nd hearing, the motion to dismiss was heard and the summary judgment motion was heard. Now, the motion to dismiss was filed, Excalibur filed a response to the motion to dismiss, and then filed a motion for summary judgment. All of that was heard at one hearing on November 2nd. And Marilyn Rochman, after concluding the arguments on the motion to dismiss, was not allowed or provided the opportunity to file a written answer to contest the material allegations of the second amended complaint. And we are of the position that that was a erroneous decision, that the motion to dismiss should have been granted and an answer should have been allowed. Moving over to the summary judgment motion, wherein the November 2nd hearing, the trial court then, at the same hearing, heard the motion on the summary judgment, bearing in mind that Marilyn Rochman doesn't have an answer to the summary judgment motion and it was argued. The sole issue before the court was whether or not pursuant to the ejectment only action, the 1997 tax deed, was void pursuant to only the bond bank, which was the case law that was relied upon. And the second amended complaint in ejectment only had actually sought to void the 1997 tax deed three ways. On the basis of pleading, they had said first that it violated the automatic stay of the bankruptcy court, which they threw that argument out later. Second, they had argued that the order confirming the sale in 1994, which was the sale of the delinquent 1993 taxes, the order confirming the sale was void. And then the third prong was the prong that the grant of summary judgment was another prong, that the 1997 tax deed was void pursuant to bond bank. Now, at the oral argument in stander, Marilyn Rochman argued that it was untimely, that any collateral attack to an order for tax deed, a judgment, or a tax deed was limited to two years. And the trial court ultimately found favor with Excalibur and argued that the tax deed was void pursuant to bond bank. On appeal, this review is de novo, and the sole question on that particular issue for the court is whether or not 12, 3, 2 years, and 1 day later, somebody can collaterally attack a tax deed pursuant only to 1401F, wherein the court obviously had in-rim jurisdiction. So the sole question for this court is, is can you attack past two years based on in personam jurisdiction, wherein the property tax code section 2245 expressly limits that to two years, and wherein the legislator codified 2245-4 in particularly to incorporate the due process right arguments of any particular homeowner or title holder. I think that Excalibur's relying on this 1902 Gloss case to say procedurally we can go, but with a complaint for ejectment. We don't have to go under 21401. Do you think that's still good law? No, no. Why not? In action, an injectment, according to Gloss, is never appropriate to set aside a tax deed. The court with exclusive jurisdiction who enters the order for tax deed is the only court that would collaterally even retain jurisdiction to relitigate the proceeding that originated into the order. You can't just go into any random court to challenge the tax deed order. It's an exclusive jurisdiction. Once the interim jurisdiction on the order and confirmation of sale occurs, then the tax deed proceeding is invoked the jurisdiction of the circuit court, which that is interim. And any defect in a notice or a requirement does not mean that order or that tax deed void. It has interim jurisdiction conferred upon the court at the time of the order and confirmation of sale. In an injectment action, you can't use Article 5, I believe it is, of the code to set aside a tax deed that is expressly governed by the property tax code. It's a special statutory proceeding, and it's expressly controlled by Section 21401. It's further limited by Section 2245, 1, 2, 3, and 4 of the property tax code in any collateral action. So the issue that the court found that the tax deed was void on was that pursuant to Devon Bank. Now, in Devon Bank, this is a case out of the First District, and the gist of that case is that it was, in fact, brought within two years. Excalibur seems to think that it was not, but the facts of the case are clear. It was brought within two years. It was brought pursuant properly to Section 2245.4, failure to name an owner in the party publication number of an order to serve notice. And it was brought pursuant in conjunction with 21401F. The Devon Bank court voided the order for tax deed, the tax deed on the basis of both 2245.4 and 21401F. That's expressed in the written opinion. It's expressed in that case. You have to have the availability of 2245.4 to argue that a circuit court, a trial court, does not have in personam jurisdiction over the tax deed proceeding. The whole point is the interplay between when you read the property tax code in whole, you have 2255, virgin ability of tax deeds, 2275, which is prima facie evidence. Pursuant to the property tax code that the 1994 order confirming the sale was regular, the taxes were delinquent. And then you have the whole purpose and intent of the property tax code for the virgin ability of tax deeds. In other words, it's a burden on any property owner to know that they have to pay taxes. And so the interplay of the whole entire reading of the property tax code is self-evident. That the 1997 tax deed in this case is not void for lack of jurisdiction. The court had interim jurisdiction and it cannot be contested 12 years after the fact. The second issue on the grant of summary judgment, which is a reminder, is it's a de novo review and it's a matter of law. And a summary judgment is proper when the pleadings, affidavits, depositions, and admissions of record construed strictly against the movement show there is no genuine issue of material fact. The key here is, is that without title, Excalibur cannot recover in an injunctment action and is not entitled to summary judgment. Now, in point of fact, this issue was not raised by Rockman on its motion to dismiss as it was challenging the cause of action and the failure to plead a proper cause of action. And the trial court missed it as well. But that does not preclude this court from review of those deeds to determine whether or not title is sufficient in Excalibur. And in this case, title is not sufficient in Excalibur. And the grant of summary judgment is improper. The whole assignment of the April 2003 assignment to the Gold Foundation was not properly executed. It was executed by the co-executors of the Gold Estate and not as co-trustees of the trust. So on its face, it's invalid. And if the Gold Foundation did not obtain title through the tax, or through that deed, assignment and quick claim, then in fact, no title could have been invaded to Excalibur. And as a matter of record, which is at C568, is where the deed is actually located. I'm sorry, I thought you were going to ask me a question. I thought I saw you raise your hand, Your Honor. No, no, no, no. I apologize. So first, the grant of summary judgment is wholly improper because Excalibur does not have title to the property. And then second, which was the basis for the trial court's ruling that the 1997 order for tax, or the tax deed was void pursuant to Devon Bayne, is clearly erroneous. It would basically turn the property tax code on its head if you were to allow or interpret the property tax code to mean that 12 years after the fact, you could challenge on in personam jurisdiction. It would defeat the merchantability of tax deeds, and quite frankly, I don't believe that any title company would insure the sale of a tax deed to a third party. And it would just strip it right out. Another point that I do want to make to the court on this argument is that Excalibur consistently and erroneously has stated to this court that the taxes that were delinquent in this case were only taxed and assessed on the pen ending in 004. This is expressly not true, and I just wanted to be able to point out to the court that when you extract oil from the ground, it becomes a taxable interest in the state of Illinois. That taxable interest could have up to 16 people who own a variable interest rate in that interest. You could have a 0.12 interest, a 0.30 interest in that mineral interest, and each one is separate taxation through a different pen. Now the record in this case, in particular on C-153 and C-52, it is clearly evident as a matter of record that the 1993 taxes on the pen ending in 002 were delinquent in $5,000 and change. The certified copy of the Franklin County Tax Collector's Judgment book is a matter of record and located in the record of 153. Now that's prime official evidence that the taxes were delinquent for the 1993 tax years and prior years. So in this case, the Franklin County trustee purchased the delinquent taxes. Now when the Franklin County trustee gets titled for property, it's a governmental entity. The future taxation ceased to exist. So if the Franklin County trustee owns the property, then for those subsequent years following it, until the point that it was sold for valuable consideration to Marilyn Rockman, there would be no tax on pen 002. But that tax would pick back up as soon as Marilyn Rockman became the legal and rightful owner, which to date she is. Lastly, Your Honor, I would like to talk about the 2008 demands to Marilyn Rockman was through a quick claim deed. Now what happened here is that the tax deed proceeding that the Franklin County petitioned on for the 1993 delinquent taxes was petitioned on on the pen that was delinquent for 002. Okay, they got an order and a tax deed to that pen and then later in 2008, they sold that to Marilyn Rockman. Now it did contain, the actual tax deed did contain a Scribner's error. It did. It's a difference between three little words. Alpha and and. It contained a Scribner's error, but that does not make the order void. And it does not make that tax deed void. And the Franklin County trustee went in and got that corrected through a corrected tax deed, but a quick claim deed then went to Marilyn Rockman in 2008. And those are just some distinguishable facts. So in close, Your Honor, first and foremost, Excalibur, according to the base of the record proper before the court today, in particular, C567, does not hold legal title to the property. They're titled based in rest off of the May 16, 2006 Gold Foundation transfer of the property to Excalibur. The Gold Foundation transfer of property to Excalibur is invalid because the Gold Foundation had no property to convey. And why is that? That's because the April 2003 assignment and deed to the Gold Foundation was not executed by any person of authority. Secondly, Your Honors, the 1997 tax deed is not void for lack of jurisdiction. There's no case law that supports that. And basically, what Excalibur is arguing that 2245-4 doesn't matter and that this court has the judicial authority to extend the codified two-year statutory limitation in section 2245-4. And we respectfully disagree with that position. Lastly, Your Honor, Marilyn Rockman absolutely had a right to file a motion to dismiss, procedural motion to dismiss lodged at that second amended complaint. Pursuant to the civil code of procedure itself, 606, if a complaint is lodged in any court and it's premised upon written instrument, that written instrument must be attached to that complaint. The four corners of Excalibur's second amended complaint, there is nothing attached to the complaint, number one. And number two, it does in fact fail us to see the cause of action. It is an injectment action seeking to quiet title, wherein quiet title has separate statutory elements and Excalibur doesn't have possession to meet that. And it's seeking to set aside a tax deed and then it's bringing in 2245-4 unkindly. And it's summary judgment motion. And, Your Honors, the motion to dismiss was improperly denied for that reason. And further and more egregiously, when the procedural motion to dismiss was denied, the Marilyn Rockman absolutely had a right to file an answer to contest the material allegations. And whether any court wants to rush or not rush a case, any prejudice to Marilyn Rockman could have simply been removed by allowing her the time, seven days, two days, one day, to file an answer to contest the material allegations in that second amendment complaint. The procedural provision of 2-1005 does not stand for the pretense that a plaintiff can file a complaint and then file a motion for an opportunity to contest the material allegation. In this particular case, what they're saying is, is they're saying, hey, we filed a complaint. You don't get a right to file a motion to dismiss. You don't get a right to file an answer. We're going straight into summary judgment. And that violates the code of procedure. Was that raised at the time the motion for summary judgment was argued? Was that raised at the time the motion for summary judgment was argued? You said, hey, slow down, judge. We want to ‑‑ I made a citation to the record that we have not been afforded the opportunity to file an answer, that we're arguing in standard without an answer, that we've just been denied the motion to dismiss and, you know, we need to be able to file an answer. But it didn't matter. The trial court was set on hearing the motion for summary judgment on that particular hearing at the same hearing on the motion to dismiss. And it did ultimately create confusion. Go ahead. Thank you, Your Honor. I would just ask that the court reverse the trial court's decision granting the summary judgment motion in favor of Excalibur because it is not a matter of law. Alternatively, I would ask that this court reverse the denying of the motion to dismiss because the cause of action was not stated. Thank you. Thank you, counsel. Counsel? Yeah, please, the court. This is a complicated case, and I'd like to really concentrate on an area that I think is really important for us to understand and I don't want to neglect the other areas, but I think I've briefed them carefully. And if the court has any questions about their right to answer and the procedure on the motion to dismiss, all of that, I think the procedures were followed very carefully. And I guess if you really want some more in-depth information, I would defer to the motion to reconsider, the response to the motion to reconsider, and then we brief the new judge, Judge Den, over a three-hour hearing and the transcript. But those issues are really what really happened around those issues is addressed in those documents if someone really has a question. But I want to talk about, and of course the standard of review, if this is something that was covered in the trial court, then it's de novo, but if it's something that was not covered in the trial court, then it's a piece of discretion because the motion to reconsider was denied, and I think there's some blurred lines there. But the thing I want to talk about today was discussed several times in the trial court, and for instance, whether a cause of action for rejectment can be raised in this case was addressed on the second partial motion for summary judgment, which was a year before the motion in this case. And the judge asked that question, and I cited the Farlow v. Oliver case, which is an ejectment case, and I would also, there are several cases here, the Gilbreth v. Delday, a sophomore said an ejectment is okay if jurisdiction gets you and they were not a party to the original action. But there are several, the United States Supreme Court case of Sechrist v. Gil, and there are all cases, but there's no reason not to allow an ejectment action in this case because we didn't want to sue Franklin County and these lawsuits against the counties for these things, and I'll explain why that is. It's appropriate to do an ejection action in this case, and as you see my explanation about what I'm trying to do here, that will make more sense. And I think the judge understood that, and the judge focused his analysis on the take notice aspect of the notice provisions where the purchaser is required to do a diligent search of the public records, which they didn't do, and is on the face of the record that this wasn't done, and focus on the responsibility of the tax purchaser, and if they can't provide notice or if there's a problem with the notice or a problem with the title to the property, the tax team proceeding shouldn't be bothering the judge with these things. But anyway, whether ejectment is a proper issue was not the focus of the defendant's motion to dismiss. Well, and before we leave that, how do you get around the Devin Bank case? That's what I want to talk about. I want to talk about what the trial judge put his emphasis on the Devin Bank case and made his ruling based on that, and I kind of thought, well, I kind of thought he should have done more, and so I included more stuff, and I did that to get around all of these trial court statements that the defendant has been saying, well, what about this and what about that? And so I went beyond the Devin Bank case, but after I did that, then I think the trial judge really was right on, and his emphasis on the Devin Bank case was appropriate, and if I were writing his opinion, I would do just what they did. But you need the background information. So the background information is the statutory emphasis on 2245 in addition to 1401 and the fact that in 2245, the first line of that says with regard to tax deeds issued under 2240. Well, if a tax deed is issued under 2240, it's got to comply with all the notice provisions. 2240 goes way in depth of if you do this and this and this and this and this. A court that issued a tax deed under 2240 has jurisdiction, and notice has been provided, and all the requirements have been met. And what I'm asking this court to do today isn't contrary to any of the other case law except for one case that I found, and the reason is Devin Bank and this case both involve property owners who did not receive any notice of the tax deed proceeding, and the two-year provision in 2245 makes sense in light of the idea that, well, within two years, after the property is sold, you're going to find out if you didn't receive a tax bill or you didn't pay taxes or you knew your property was being sold for taxes, within two years, you would have known this. But if there's no—in this case, there was no notice whatsoever. This property owner was given a tax bill every year, and they paid their tax bill every year. And there was a discrepancy because there were two parcel numbers that identified the same property. And then the property description in the publication notice and in any of the entire tax proceeding, and all of this is in the summary judgment evidence. I went back to the collector's records and the county clerk's records, and it's all in the summary judgment evidence. The tax—and I'll step away from the podium. Sure. Yes, ma'am. The tax—the property at issue is in red. It's all located in the northeast quarter section. The Mackamond Lease, which was conveyed to the Gould Trust and by Riverside American Farms, apparently in the records, it's clear that Riverside American Farms was delinquent on some taxes, and that property was—that land that they owned, or that mineral interest, would underline this northeast quarter section and the north half of the southeast quarter section. And because of the error, it was listed in the property description as the northeast quarter section of the north half of the southeast quarter section, which would be located here, but that description really wouldn't—if this area were being described, it wouldn't be described like that. But this is where it would be located, and this would be the size of it. So the 1990 tax—1997 tax deed and the entire tax proceedings that are documented in the summary judgment evidence describe the property that would be about this size located here. And so even if the 1997 tax deed is valid, it doesn't entitle Ms. Rothman to possession of this property. And so she's a trespasser on my client's property, and we could all go home, except for all the tax deed jurisdiction issues that are a problem. Let me explain why she can be ejected, and also just because I say Pursuant to 6101, which I think is the number for the ejection statute, that doesn't necessarily mean that that's it. But I don't think a petition under 1401 against the county collector is necessary, and 1401 can be used as part of my ejection action to invalidate a deed under 1401F. And I'm going to explain why Section 4 of 2545, which is what has the two-year provision, can be used beyond the two years under 1401F. And that's when the property tax deed is not issued under 2240. I guess I should give you a copy of the statute so you can look at it. I didn't do that. But if there is no notice whatsoever that there's a lack of jurisdiction, and it's not in persona jurisdiction, it's in rem jurisdiction. In rem jurisdiction requires personal notice. Under Kenoria v. Neff, it has been overruled except not that part of it. And Mullane v. Hanover Trust requires that notice be provided. The United States Supreme Court in Jones v. Flowers required notice be given to the taxpayer, that the notice has to be reasonably calculated to notify the taxpayer. And so the Illinois Supreme Court in the Loeh 2 case is under remand from the United States Supreme Court to comply with the notice provision. So these notice provisions are important. And the Loeh 2 case went into great detail saying our statute's fine. There's nothing wrong with our statute. It has all kinds of notice provisions, and that's true. But there's been some confusion in applying the statute because there's an idea out there that in rem jurisdiction doesn't require notice to the property owner. And the Devon Bank case goes into a discussion of Kenoria v. Neff and the Mullane case. And here's one of the reasons for the misconception. There are buzzwords out of our Illinois case law that are applying this statute that are correct in those cases for reasons that apply to those cases. And the lawyers are taking those buzzwords without understanding the other underlying principles. So here's an example. An order is rendered void not by reason of mere error or impropriety, but by lack of jurisdiction by the issuing court of either the subject matter or the necessary parties. I read that over and over again in this case. I'm like, yeah, okay. And the thing she was saying, I was like, yeah, what's the problem? But if you take that out of context, you're going to forget that the statute requires you to notify the property owner. And in this case, it was Farlow v. Oliver in 1963, Illinois Supreme Court. The plaintiff admitted receipt of notice of the tax proceeding in that case. And so this statement only applied to the take notice portion. So if there are improprieties and errors in the take notice portion of the property tax proceeding according to the judicial construction of Illinois law, well, then that doesn't have anything to do with the court's jurisdiction. And that's what I'm saying is that the jurisdiction applies to the application for judgment of sale. And that's another one of the buzzwords. And here it is. Tax deed proceedings are in rem in nature rather than in personam. And the court acquires jurisdiction after the county collector makes his application for judgment in order of sale. And I read this over and over again. I was like, well, yeah, they get a jurisdiction after the county collector makes his judgment of sale. I don't know what the problem is here. Well, the problem is the defendant reads that differently than I do. Because the county collector has to give notice and determine there's a deficiency and do some steps before to find out who the owner is and provide the notice. And the statute says if you follow these statutory items, this is sufficient notice. So the statute itself, I think it's section 115, defines the sufficiency of the notice. And so after the county collector does all that and the judge decides that, yeah, they've done all that, then there's jurisdiction. And if the county collector doesn't, if it's determined that, in fact, they didn't notify the right party, there's a jurisdiction problem. And the cases I describe in my brief explain why that's a jurisdictional issue. But shouldn't that be raised under a 214.01 petition? I mean, again, that's why I'm getting back to my initial questions of it was filed as an injectment action. But statutorily, don't you need to comply with 214.01 and make your points through that type of petition? Well, I was really careful about the procedure. And we didn't want to sue the county. And I listed the cases that have done ejection in these kinds of tax proceedings, and there are some. And the Gloss v. Patterson case explained why that can be done. And they ruled in favor of the ejectment plaintiff and said you can't set aside a tax deed in an injection action, and I'm not trying to set aside the tax deed. And that 1902 Gloss case, I was back to the question I asked her. Since then, we've had Section 72 and now 214.01, a statutory remedy devised, which I guess my question, why doesn't that supersede the Gloss case? Why aren't you bound to petition the court under those provisions? And if your ejectment petition is really – maybe we could construe it as a 214.01 petition. You could, except it's not against the county. Well, they'd be a necessary party, wouldn't they? They would be a necessary party. And under the circumstances, they're trespassing. This is a classic ejectment action. And the only complication is it's not that they really have any kind of possessory interest in this property or any claim to possession of this property, except by virtue of mistakes in the property tax proceeding. And I really think that the trial judge in this case and the Devon Bank case, the judge in that case, it wasn't an ejection case. It was a 1401 case. But they were emphasizing the responsibility of the tax purchaser because I think these buzzwords – and there are other ones. I won't belabor this issue. But it's being abused by the tax purchasers to say, oh, well, I made a mistake in the notice, and oops, I got this property. And the other person is saying, hey, wait a minute. And all they have to do is a basic title search and find the answer to their question. And with regard to the – unless the court has any other questions, I'd be happy to answer those. With regard to the chain of title issue, the curative provisions under California law, that if that were improperly executed and improperly acknowledged document, the curative provisions would apply here, and so there wouldn't be a breach in the chain of title, especially since the people who signed the deed would be the people who were entitled to the property if that were true. If there's that breach in the chain of title, that doesn't mean, as Rothman gets the property, that means that the people who signed the deed to Excalibur Energy get the property because they were the beneficiaries of the Joseph Gould Trust who conveyed the property to the Joseph Gould Foundation. And apparently Joseph Gould died, and their executor signed the deed. Well, then also the merger doctrine and trust might have applied because then the beneficiaries and the trustees were the same people. And so this was a sophisticated transaction. I just really wouldn't second-guess the lawyers in that case, especially since there's a curative provision. I don't think that there's anything wrong with that deed, and I didn't at the time, and I think the chain of title issue is a red herring. And it doesn't do what Ms. Rothman would want in this case, would be to get the property or possession of the property. And also, back to the ejectment issue, we're suing for possession. If there's an issue between the county and Ms. Rothman, then the county and Ms. Rothman can deal with that issue. But ejectment is about possession, and that's what the Gloss v. Patterson case explained, and that's why I cited it. But there are other cases, and the trial judge asked me, well, shouldn't this be against the county? And I said, well, we don't want to sue the county. Here are the cases that show that this has been done with ejectment, and so that's what I did. Oh, also, she talks about personal jurisdiction. This is interim jurisdiction. You have to have personal notice in interim jurisdiction. And unless the court has any questions, I guess that's all I have. I don't believe so. Thank you, counsel. Counsel? Mindy Stallion, Your Honor, again, on behalf of Defendant Marilyn Rothman. Your Honor, Excalibur has not challenged, through any complaint or any proceeding, the 2008 deed that was issued from the Franklin County trustee to Marilyn Rothman, the corrective deed, that gives Marilyn Rothman title. Right now, she holds legal title to the disputed premises. There's been no challenge legally made to that deed whatsoever. The sole challenge from Excalibur's end is they're challenging the 1997 tax deed because their theory is that the action in injectment is proper if the 1997 tax deed is void because then that would absolve the conveyance to Rothman. Now, real quick, I want to touch upon something that Ms. Yochum stated that is entirely not true or supported by that. The tax deed proceeding that the county trustee initiated after the order and confirmation for sale did not erroneously describe the property. It did not. Every take notice, section 22-5, 10, 20, every publication notice says expressly on the notice the permanent, the property identification number, or the legal description. Every one of those notices had the correct PIN on those notices. A tax purchaser can elect between the PIN, which is interchangeable with the legal description. The tax deed proceeding is separate and distinct from what happened in Devon Bank. In Devon Bank, property A sold B's petitioned on. That is not what happened in this tax deed proceeding. Devon Bank was challenged pursuant to 22-45, or that is not available as a timely remedy. The sole and key question for this court is simple. Can any person collaterally challenge the tax deed 2 years in 1 day, 3 years, 12 years, solely on the basis of 214-01F to find that the court did not have in persona jurisdiction? I say no. I say that the court has in rem jurisdiction in the codified due process argument was intended by the legislator when they added it to 22-45-4. It is expressly limited to 2 years. That is not the case here. The second point I want to make out is that was a wrong use. It's been stated to the court is she's saying that the Gold Foundation acquired legal title. That's not true. That's not true. This is in Appendix 95-96. It's on the record of 557-568. The assignment in Quick Claim D says this. The Clyde E. Tritt and Carolyn Dirks as co-trustees of the Joseph B. Gold Trust convey in Quick Claim to the Gold Foundation. This is executed by Carolyn Dirks as co-executor of the estate of Joseph B. Gold. There's no fact anywhere contained in the record that the co-executors of the Joseph Gold estate had any authority to act on behalf of the Joseph B. Gold Foundation. There's no title conveyed to the Gold Foundation. If there's no title in Gold Foundation, they had no title to convey to Excalibur. You're correct, Your Honor, in Justice, that 2245 is the further limitation in Section 214.1 of a collateral challenge to a property tax bill proceeding. That's absolutely correct. The amendments that were codified, 1955 all the way through the late 1980s, there was a time and point in this state where the only collateral tax that could be made was fraud. But they added 2245.4 for a reason, to incorporate the due process rights. Your Honor, we did not get to finish this case. We filed a motion to dismiss. We had no right to answer. They have no title. In their 214.1 petition, it's non-existent. They brought an injectment action. And you cannot, an injectment action contrives legal title. Marilyn Rockman had title. There's no dispute to that. It should have been dismissed. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take this case under advisement. The court will be in a short recess and resume oral argument. All rise.